# No. 22-6197

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

KENNETH RAY JENKINS,

Plaintiff–Appellant,

v.

SHERIFF CALVIN WOODARD,

Defendant–Appellee.

On Appeal From The United States District Court
For The Eastern District of North Carolina, Western Division
Civil Action No. 5:19-CT-03190-BO

## BRIEF OF APPELLANT KENNETH RAY JENKINS

J. Pierce Lamberson
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
804-787-8039
*plamberson@hunton.com*

*Attorney for Plaintiff-Appellant
Kenneth Ray Jenkins*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-6197        Caption: Kenneth Ray Jenkins v. Sheriff Calvin Woodard

Pursuant to FRAP 26.1 and Local Rule 26.1,

Kenneth Ray Jenkins
(name of party/amicus)

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ J. Pierce Lamberson                    Date:   11/07/2023

Counsel for: Kenneth Ray Jenkins

Print to PDF for Filing

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

JURISDICTIONAL STATEMENT ....................................................................3

STATEMENT OF THE ISSUES........................................................................3

STATEMENT OF THE CASE............................................................................4

I.      Factual Background ...............................................................................4

II.     Procedural History .................................................................................6

        A.      Mr. Jenkins Files a Pro Se Complaint and Repeatedly Inquires
                About Assistance of Counsel ......................................................6

        B.      The District Court Denies Mr. Jenkins's Request for Counsel
                and Mr. Jenkins Amends His Complaint ...............................7

        C.      Sheriff Woodard Moves for Summary Judgment After the
                District Court Dismisses All Other Defendants....................8

        D.      In Response to Sheriff Woodard's Summary Judgment Motion,
                Mr. Jenkins Renews His Request for Counsel and Asks for
                Additional Time to Conduct Discovery .................................9

        E.      The District Court Denies Mr. Jenkins's Requests for Counsel
                and Additional Time to Conduct Discovery, and Enters
                Summary Judgment in Favor of Sheriff Woodard...........10

STANDARD OF REVIEW ..............................................................................11

SUMMARY OF ARGUMENT ........................................................................11

ARGUMENT ...................................................................................................13

I.      This Court has Jurisdiction to Review the District Court's
        Interlocutory Orders Denying Mr. Jenkins Counsel and Additional
        Time for Discovery.............................................................................13

II.     The District Court Erred by Granting Summary Judgment Without
        Providing Mr. Jenkins Additional Time for Discovery....................18

III.   The Court Should Remand with Instructions to Appoint Trial Counsel
       to Assist Mr. Jenkins with Discovery and Further Litigation of His
       Civil Rights Claims..............................................................................24

       A.   The District Court Erred by Granting Summary Judgment
            Without Assigning Trial Counsel to Mr. Jenkins. ............................25

       B.   Even if the District Court Did Not Abuse its Discretion by
            Failing to Appoint Mr. Jenkins Trial Counsel, the Court Should
            Remand with Instructions to Appoint Counsel. .................................30

CONCLUSION ........................................................................................31

STATEMENT REGARDING ORAL ARGUMENT ............................................32

CERTIFICATE OF COMPLIANCE........................................................................33

CERTIFICATE OF SERVICE ..............................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................. 19

*Bogart v. Chapell*,
   396 F.3d 548 (4th Cir. 2005) .............................................. 15, 16, 18

*Branch v. Cole*,
   686 F.2d 264 (5th Cir. 1982) ......................................................... 25

*Brock v. City of Richmond*,
   983 F.2d 1055 (4th Cir. 1993) (Table) ........................................ 25, 27

*Brooks v. Johnson*,
   924 F.3d 104 (4th Cir. 2019) ....................................................... 30

*Canady v. Crestar Mortg. Corp.*,
   109 F.3d 969 (4th Cir. 1997) ....................................................... 15

*Clark v. Cartledge*,
   829 F.3d 303 (4th Cir. 2016) ....................................................... 16

*Evans v. Kuplinski*,
   713 F. App'x 167 (4th Cir. 2017) .............................................. 28, 29

*Gonpo v. Sonam's Stonewalls & Art, LLC*,
   41 F.4th 1 (1st Cir. 2022) ........................................................... 15

*Gordon v. Leeke*,
   574 F.2d 1147 (4th Cir. 1978) ............................................. 24, 25, 31

*Harrods Ltd. v. Sixty Internet Domain Names*,
   302 F.3d 214 (4th Cir. 2002) .............................................. *passim*

*Jackson v. Lightsey*,
   775 F.3d 170 (4th Cir. 2014) ....................................................... 17

*McCray v. Md. Dep't of Transp.*,
   741 F.3d 480 (4th Cir. 2014) ................................................... 2, 19

*Miller v. Simmons*,
   814 F.2d 962 (4th Cir. 1987) ............................................................17

*Norsworthy v. Houston Indep. Sch. Dist.*,
   70 F.4th 332 (5th Cir. 2023) ...........................................................15

*Pledger v. Lynch*,
   5 F.4th 511 (4th Cir. 2021) ......................................................*passim*

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996)...........................................................................16

*Shaw v. Foreman*,
   59 F.4th 121 (4th Cir. 2023) ....................................................*passim*

*Spann v. Perry*,
   No. 21-6740, 2022 WL 4364020 (4th Cir. Sept. 21, 2022).................30

*St. Augustine Sch. v. Underly*,
   78 F.4th 349 (7th Cir. 2023) ...........................................................15

*United States v. Garcia*,
   65 F.3d 17 (4th Cir. 1995) ..............................................................16

*Whisenant v. Yuam*,
   739 F.2d 160 (4th Cir. 1984), *abrogated in part on other grounds
   by Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).................*passim*

*Williams v. Collier*,
   357 F. App'x 532 (4th Cir. 2009) ....................................................31

**Statutes and Rules**

28 U.S.C. §1291..................................................................................3, 17

28 U.S.C. §1331.......................................................................................3

28 U.S.C. §1343(a) ..................................................................................3

28 U.S.C. §1915A.....................................................................................8

42 U.S.C. §1983 ...............................................................................1, 3, 6

Fed. R. App. P. 3.............................................................................*passim*

Fed. R. App. P. 3(c) ................................................................................15

Fed. R. App. P. 3(c)(1)(B) ......................................................................14

Fed. R. App. P. 3(c)(4)......................................................................14, 16

Fed. R. App. P. 3(c)(6)......................................................................14, 16

Fed. R. App. P. 56(d) .....................................................................*passim*

4th Cir. R. 34(b) ......................................................................................17

## **INTRODUCTION**

Five years ago, Kenneth Ray Jenkins spent several months as a pretrial detainee at the Wilson County Detention Center. His experience there was harrowing. After attempting to commit suicide, Mr. Jenkins spent nearly a week in a cell that he claims reeked of and contained human excrement. He also alleges that Detention Center staff ignored basic hygiene practices in both the suicide-prevention cell and the jail's general population. Not long after his stay in the suicide-prevention cell, Mr. Jenkins started bleeding. Although he alerted prison staff to his condition, he claims that he did not receive medical attention *for five months* while heavy bleeding continued. Once he did, he was diagnosed with an infection requiring medical intervention. Looking back on his experience, Mr. Jenkins believes he could have died.

Seeking to hold Wilson County accountable for this miserable ordeal, Mr. Jenkins filed a pro se complaint under 42 U.S.C. § 1983, alleging Fourteenth Amendment conditions-of-confinement and deliberate indifference claims. But on January 13, 2022, the district court granted summary judgment in favor of the sole remaining Defendant.

Mr. Jenkins never stood a chance.

Despite Mr. Jenkins's long history of mental illness, low I.Q., lack of formal education, and inability to access legal materials and evidence, the district court

1

repeatedly denied his pleas for assistance of counsel. From the very beginning of the case, the district court locked into the conclusion that Mr. Jenkins had not shown exceptional circumstances meriting assistance, and never wavered from that summary conclusion as Mr. Jenkins struggled to effectively litigate his case and revealed more and more information calling into question his intelligence and mental health.

Making matters worse, when Mr. Jenkins requested additional time to conduct discovery from his jail cell in order to combat the Defendant's motion for summary judgment, the district court refused. Despite case after case from this Court in recent years reversing summary judgment for failure to allow additional time for discovery in circumstances just like Mr. Jenkins's—cases that stress that such relief is "broadly favored" and should be "liberally granted" when a pro se litigant must uncover evidence of subjective intent—the district court denied Mr. Jenkins a fair chance to discover evidence supporting his theory of the case. *See Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023); *Pledger v. Lynch*, 5 F.4th 511, 525 (4th Cir. 2021); *see also McCray v. Md. Dep't of Transp.*, 741 F.3d 480, 484 (4th Cir. 2014); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 243–45 (4th Cir. 2002).

The district court's denials of assistance of counsel and additional time for discovery constitute reversible error and prejudiced Mr. Jenkins's response to the motion for summary judgment. This Court should reverse and remand with

instructions to appoint Mr. Jenkins counsel so that his serious allegations regarding his conditions of confinement and the Defendant's deliberate indifference to his medical needs can receive a fair hearing.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Mr. Jenkins's pro se 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331 and § 1343(a). On January 13, 2022, the district court granted summary judgment to Defendant-Appellee, Sheriff Calvin Woodard. JA75–89. Mr. Jenkins timely noted an appeal from that final judgment on February 11, 2022, which the district court docketed seven days later. JA91–92.

This Court has jurisdiction under 28 U.S.C. § 1291. As discussed below, Federal Rule of Appellate Procedure 3 grants this Court jurisdiction to review the district court's final summary judgment order, as well as all non-final interlocutory orders that merged into that judgment. Those interlocutory orders include the district court's orders denying counsel and denying additional time for discovery that Mr. Jenkins challenges in this brief. *See* JA21–22 (denying appointment of counsel); JA68–70 (denying appointment of counsel and additional time for discovery); JA73–74 (affirming decision to deny counsel).

## STATEMENT OF THE ISSUES

1.    Does this Court have jurisdiction to review the non-final, non-appealable interlocutory orders that merged into the district court's final order

3

granting summary judgment, even though Mr. Jenkins identified only the final judgment in his notice of appeal?

2.      Did the district court err by granting summary judgment without allowing Mr. Jenkins additional time to conduct discovery when this Court has repeatedly stressed that such relief is "broadly favored" and should be "liberally granted," especially when a pro se civil rights litigant must discover evidence of subjective knowledge and evidence lying in the exclusive control of the Defendant?

3.      Should the Court remand to the district court with instructions to appoint trial counsel to assist Mr. Jenkins with discovery in light of Mr. Jenkins's history of mental illness, low I.Q., lack of formal education, and demonstrated inability to effectively litigate his case and discover evidence within the Defendant's exclusive control and bearing on the Defendant's subjective knowledge?

## STATEMENT OF THE CASE

### I.  Factual Background

Mr. Jenkins suffers from a long history of bipolar disorder, depression, and severe mood swings.  JA48.  In the summer of 2018, Mr. Jenkins shot himself in the left shoulder because voices in his head told him to commit suicide.  JA48.  He has received in-patient care for his emotional and psychiatric problems on multiple occasions.  JA48.

4

Starting in August 2018, Mr. Jenkins spent several months as a pretrial detainee at the Wilson County Detention Center. *See* JA28, JA77. Not long after he arrived, prison officials separated Mr. Jenkins from the general population following an altercation precipitated by a dispute over his access to various medications. JA11. In response, Mr. Jenkins "attempt[ed] to kill [himself]" and was sent to a suicide-prevention cell known as "A-300" or "the Rubber Room." JA11, JA28.

According to Mr. Jenkins, the conditions in the Rubber Room were filthy. In his telling, the room "[was] infested with [feces] and [was] never [sanitized]." JA11. "It smell[ed] like waste" and it had feces "stuck on top of the door like [it had] been the[re] for years." JA11. During his time in that cell, prison officials "fed [him] on the floor where [feces] was . . . and never let [him] wash [his] hands at all" and told him "to eat with his hands." JA11. Both in the suicide-prevention cell and in the general population, Mr. Jenkins complained that prison officials served him food on trays that contained "green bacteria." JA28. According to Mr. Jenkins, prison staff did not sanitize toilets or sinks, and prisoners in the general population lacked adequate cleaning supplies to sanitize their cells. JA12.

Not long after his stint in the Rubber Room, Mr. Jenkins "start[ed] to bleed" frequently. JA11. He claims that he bled heavily at the Wilson County Detention Center for five months without ever receiving any medical attention. JA11–13.

5

Ultimately, Mr. Jenkins contracted a bacterial infection that required a medical procedure.  JA12, JA28.  Medical professionals "lance[d] [Mr. Jenkins's] colon polyps" and monitored him for further bleeding.  JA12.  They told Mr. Jenkins that one of his swollen polyps was "the worst they [had] seen."  JA13.  In total, Mr. Jenkins suffered excessive bleeding for approximately eight months during his time at the Wilson County Detention Center.  JA12.

## II.    Procedural History

### A.    Mr. Jenkins Files a Pro Se Complaint and Repeatedly Inquires About Assistance of Counsel

On June 21, 2019, Mr. Jenkins filed a pro se complaint under 42 U.S.C. § 1983 against Wilson County.  JA7–16.  Therein, Mr. Jenkins explained that he did not have bleeding episodes when he arrived at the jail.  He alleged that exposure to the unsanitary conditions in the Rubber Room and general population caused him to "bleed [heavily]."  JA11, JA13–14.  Although he started bleeding in October 2018, shortly after spending several days in the Rubber Room, he alleged that "Wilson County never gave [him] medical attention until 2-19 and [that he bled heavily] until [he] went to the hospital."  JA11.  He sought to hold Wilson County accountable for "the pain they cause[d him] and the cruel and unusual punishment they put [him] through."  JA14.  Mr. Jenkins certified that he had never brought any previous lawsuits in state or federal court as a prisoner.  JA15.

6

After filing his complaint, Mr. Jenkins repeatedly inquired about receiving assistance of counsel. On November 11, 2019, Mr. Jenkins wrote a letter to the district court asking if he had an attorney and, if so, when he could "speak with him." JA18. The next day, he again wrote to ask who his "court appointed lawyer" was and how he could "reach him." JA19. A month and a half later, Mr. Jenkins wrote a letter to the court indicating that he believed he had a lawyer in this case. JA20.

## B.   The District Court Denies Mr. Jenkins's Request for Counsel and Mr. Jenkins Amends His Complaint

About three weeks later, the district court entered an order denying Mr. Jenkins appointment of counsel and instructing him to amend his complaint. JA21–22. In denying counsel, the district court recited the "exceptional circumstances" standard governing appointment of counsel in civil cases. JA22 (citing *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated in part on other grounds by Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989)). Despite Mr. Jenkins's history of mental illness, evident on the face of the original complaint, the district court summarily concluded that "[t]he facts of this case and plaintiff's abilities [did] not present the requisite exceptional circumstances." JA22.

Later that month, Mr. Jenkins filed an amended complaint. JA23–33. This time he named as defendants the Wilson County Sheriff's Department, Sheriff Woodard, Lieutenant Jones, and several members of the detention center staff—Detention Officer Israel, and Nurses "Dawn" and "Wendy." JA23, JA25–27, JA33.

7

He alleged First and Fourteenth Amendment violations regarding his "condition[s] of confinement," the Defendants' obstruction of his "reporting of medical attention," and the Defendants' obstruction of "the exhaustion of [administrative] remedies." JA27.  Mr. Jenkins repeated many of the allegations from his original complaint, including that the "conditions of the detention center in [the] suicide cell and general population were so filthy" that he required "surgery because of [a] bacterial infection[.]" JA28.  He alleged that the Defendants placed him in "unsanitary living conditions," and "neglected sanitation and hygiene care of the entire facility." JA27. Mr. Jenkins alleged that Sheriff Woodard "failed to uphold his duty towards accountability of designees" and responded only once to "a multitude of complaints." JA27.  Mr. Jenkins sought several forms of injunctive relief, and punitive and compensatory damages totaling $20,001, "or more." JA30.

## C.    Sheriff Woodard Moves for Summary Judgment After the District Court Dismisses All Other Defendants

Over eight months later, the district court conducted an initial review of the amended complaint pursuant to 28 U.S.C. § 1915A, and allowed the Fourteenth Amendment claim to proceed against Sheriff Woodard, because it "[was] not clearly frivolous." JA37, JA39.  But the district court discerned no First Amendment claim and dismissed the remaining Defendants.  JA37, JA39.

On December 3, 2020, the district court entered a scheduling order asking for all motions within four months. JA45. Five months later, Sheriff Woodard filed a motion for summary judgment. JA46–47.

**D.    In Response to Sheriff Woodard's Summary Judgment Motion, Mr. Jenkins Renews His Request for Counsel and Asks for Additional Time to Conduct Discovery**

In response to Sheriff Woodard's motion, Mr. Jenkins submitted a memorandum in which he renewed his request for an attorney and asked for additional time to conduct discovery. JA65–67. Mr. Jenkins explained that "he is not an attorney and has a history of mental illness," "does not have an education," and that he did "not understand what he need[ed] to do." JA65. Then an inmate at Johnston Correctional Institution outside of Smithfield, North Carolina, he added that he did not "[have] access to law materials and[,] due to his . . . medical conditions and the effect of the new coronavirus on his mental health[,]" was "not in any shape" to respond to the motion to dismiss. JA66–67. He stated that his "I.Q. is very low." JA67.

In addition, because he had "no case law or other evidence to cite," Mr. Jenkins sought "additional time or assistance to discover other evidence to support his argument." JA67. Without assistance of counsel and additional time, Mr. Jenkins did his best to respond to the motion, stating that he "disagree[d] with Defendant's account of the statement of facts." JA66.

9

**E.      The District Court Denies Mr. Jenkins's Requests for Counsel and Additional Time to Conduct Discovery, and Enters Summary Judgment in Favor of Sheriff Woodard**

On November 16, 2021, the district court entered an order denying Mr. Jenkins's requests for counsel and additional time for discovery. JA68–70. In denying appointment of counsel, the district court recited the same three-sentence passage it used to reject Mr. Jenkins's prior request. Notwithstanding Mr. Jenkins's additional revelations concerning his low I.Q. and mental health, the district court found that the "facts of this case and the plaintiff's abilities [did] not present the requisite exceptional circumstances." JA69. In denying Mr. Jenkins's request for additional time for discovery, the district court reasoned only that "the court entered the scheduling order on December 3, 2020," and that Mr. Jenkins "fail[ed] to provide 'specified reasons' why facts essential to justifying opposition to defendant's motion for summary judgment are unavailable to him." JA69.

Two weeks later, Mr. Jenkins sought reconsideration of the district court's ruling denying appointment of counsel. JA71. Mr. Jenkins emphasized that he "is a layman at law, lacks access to law books, lacks an [e]ducation, and [has] a history of mental illness and takes a lot of medication." JA71. He added that his "I.Q. is 84 or lower." JA71. The district court denied reconsideration. JA73–74.

On January 13, 2022, the district court entered an order granting Sheriff Woodard's motion for summary judgment and closing the case. JA89. On the

objective and subjective prongs of Mr. Jenkins's conditions-of-confinement and deliberate indifference claims, the district court repeatedly found that Mr. Jenkins did not produce evidence and did not "contest [Sheriff Woodard's] contrary averments." JA81–82, JA84, JA87–88.

Mr. Jenkins timely noted an appeal "from the final judgment and/or order entered in this action on 1-13-2022." JA91–92.

## STANDARD OF REVIEW

This Court reviews a district court's denial of a request for appointment of counsel in civil cases for abuse of discretion. *Whisenant*, 739 F.2d at 163. "[I]t is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." *Id.*

Likewise, "[t]his Court reviews a district court's pre-discovery grant of summary judgment for abuse of discretion." *Shaw*, 59 F.4th at 128–29. In general, however, "summary judgment must be 'refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Id.* (quoting *Harrods*, 302 F.3d at 244).

## SUMMARY OF ARGUMENT

**I.** This Court has jurisdiction to review the district court's interlocutory orders denying Mr. Jenkins counsel and additional time to conduct discovery. These non-final interlocutory orders merged into the final judgment and did not become

11

reviewable until the district court granted summary judgment. Moreover, as the 2021 amendment to Federal Rule of Appellate Procedure 3 makes clear, the appellant need not specifically list on the notice of appeal each and every interlocutory order covered by the appeal. Under the new Rule, it is sufficient—and indeed preferable—to list only the final judgment. Because Mr. Jenkins identified the final judgment in his notice of appeal, and demonstrated through his informal brief that he intended to appeal prior orders denying counsel and additional time for discovery, this Court has jurisdiction to review those orders.

II.    In recent years, this Court has repeatedly reiterated its instruction that requests for additional time to conduct discovery should be "broadly favored" and "liberally granted" to protect litigants from premature summary judgment motions. And it has continuously enforced that mantra, excusing technical non-compliance with Federal Rule of Civil Procedure 56(d) and reversing summary judgment when additional time is not afforded. That is especially true when, as here, a pro se litigant is called upon to produce evidence of subjective intent and evidence that lies in the exclusive control of prison officials. The district court failed to heed these precedents and committed reversible error in denying Mr. Jenkins's request for additional time to conduct discovery.

III.    A right to assistance of counsel exists in civil cases when the abilities of the plaintiff and the complexity of a claim present exceptional circumstances.

Those circumstances are present here.  Mr. Jenkins has a long history of severe mental illness, a low I.Q., lacks formal education, and has demonstrated through his filings in this case that he cannot effectively litigate and discover facts bearing on his claims.  Despite Mr. Jenkins's serial requests for counsel, the district court never wavered from its threadbare conclusion that exceptional circumstances were not present, and indeed never meaningfully grappled with the exceptional circumstances analysis.  That was error.

But even if the Court finds that the district court did not abuse its discretion in denying counsel, consistent with past precedent, the Court should remand with instructions to appoint Mr. Jenkins counsel to assist with the additional discovery he was erroneously denied.

## **ARGUMENT**

### I.    **This Court has Jurisdiction to Review the District Court's Interlocutory Orders Denying Mr. Jenkins Counsel and Additional Time for Discovery.**

Mr. Jenkins challenges not only the district court's order granting summary judgment, JA89, but also several prior interlocutory orders that merged into that final judgment, *see* JA21–22 (denying appointment of counsel); JA68–70 (denying appointment of counsel and additional time for discovery); JA73–74 (affirming decision to deny counsel).  Although Mr. Jenkins did not specifically identify these non-final interlocutory orders in his notice of appeal, JA91, that fact does not obstruct this Court's review of the issues the orders raise.  To the extent that any

13

doubt exists concerning this Court's jurisdiction to review the orders forming the basis for Mr. Jenkins's claims, *see* ECF No. 10 at 2, the newly-updated Federal Rule of Appellate Procedure 3 puts those doubts to rest.

Federal Rule of Appellate Procedure 3 unequivocally directs that a notice of appeal need not specifically identify each and every interlocutory order that an appellant intends to challenge on appeal. Instead, Rule 3(c)(1)(B) states that the notice of appeal must "designate the judgment—or the appealable order—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B). Rule 3(c)(4) clarifies that requirement, explaining that the notice of appeal "encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order." Fed. R. App. P. 3(c)(4). As a result, "*[i]t is not necessary to designate those [non-final interlocutory] orders in the notice of appeal*." *Id.* (emphasis added). Moreover, Rule 3(c)(6) gives the appellant the option of narrowing the appeal by "expressly stating that the notice of appeal is so limited." Fed. R. App. P. 3(c)(6). But absent such an express statement, "*specific designations do not limit the scope of the notice of appeal*." *Id.* (emphasis added).

These provisions reflect important changes to Rule 3 made in December 2021. Prior to the 2021 amendment, the rule stated only that the notice of appeal had to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B) (2019). This sometimes led to "the misconception that it [was] necessary

14

or appropriate to designate each and every order of the district court that the
appellant [wished] to challenge on appeal." Fed. R. App. P. 3 advisory committee's
note to 2021 amendment. Indeed, "[a] number of courts, using the expressio unius
rationale, [previously] held that such a designation of a particular order limits the
scope of the notice of appeal to the particular order, and prevents the appellant from
challenging other orders that would otherwise be reviewable, under the merger
principle, on appeal from the final judgment." *Id.* The 2021 amendment removed
that "trap for the unwary." *Id.* It confirmed that "[d]esignation of the final judgment
confers appellate jurisdiction over prior interlocutory orders that merge into the final
judgment," regardless of whether the appellant specifically designates those orders.
*Id.*

Unlike several of its sister circuits,[1] this Court has not yet had occasion to
review the 2021 amendment to Rule 3, but the changes correspond to its precedents
in many respects. This Court has long held, for example, that it "construe[s] Rule
3(c) liberally," "[i]n order to avoid technical impediments to appellate review."
*Bogart v. Chapell*, 396 F.3d 548, 554–55 (4th Cir. 2005) (quoting *Canady v. Crestar
Mortg. Corp.*, 109 F.3d 969, 974 (4th Cir. 1997)). It therefore looks to the contents

---

[1] *See, e.g.*, *St. Augustine Sch. v. Underly*, 78 F.4th 349, 354 (7th Cir. 2023);
*Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 334–35 (5th Cir. 2023);
*Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 9–10 (1st Cir. 2022).

15

of the appellant's brief, rather than the orders listed on the notice of appeal, to determine whether the appellant has preserved an issue for appeal. *Bogart*, 396 F.3d at 555; *accord* Fed. R. App. P. 3 advisory committee's note to 2021 amendment ("It is the role of the briefs, not the notice of appeal, to focus the issues on appeal."). "[A]s long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced by the mistake," the Court does not dwell on technical errors in designating the issues on appeal. *Bogart*, 396 F.3d at 555. That policy "applies 'especially' to pro se filings." *Clark v. Cartledge*, 829 F.3d 303, 305 (4th Cir. 2016) (citing *United States v. Garcia*, 65 F.3d 17, 19 (4th Cir. 1995)).

In the wake of the 2021 amendment to Rule 3, and consistent with this Court's precedents, there can be no question that this Court has jurisdiction to review the interlocutory orders denying appointment of counsel and additional time for discovery that Mr. Jenkins challenges in this appeal. In his notice of appeal, Mr. Jenkins identified the only final, appealable judgment in this case—the district court's order granting Sheriff Woodard summary judgment. JA91. Moreover, he did not "expressly stat[e]" under Rule 3(c)(6) his intent to limit the appeal in any way. JA91. The notice therefore "encompasse[d] all orders that, for purposes of appeal, merge[d] into" the summary judgment order. Fed. R. App. P. 3(c)(4). Because the orders denying appointment of counsel and additional time for discovery were non-final, non-appealable orders, *see Quackenbush v. Allstate Ins.*

16

*Co.*, 517 U.S. 706, 712 (1996) ("[A] decision is ordinarily considered final and appealable under § 1291 only if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"); *Miller v. Simmons*, 814 F.2d 962, 965 (4th Cir. 1987) ("[O]rders denying motions for appointment of counsel in civil cases are not subject to interlocutory appeals."), they merged into the summary judgment order, and this Court has jurisdiction to review them now.

That is especially true because Mr. Jenkins preserved the orders for review by identifying issues stemming from them in his informal brief. Consistent with the Advisory Committee's instruction to look to the briefs (including this brief)—rather than the notice of appeal—to focus the issues on appeal, this Court limits review to the "issues" preserved in a pro se appellant's informal brief. *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014) (citing 4th Cir. R. 34(b)); *see* Fed. R. App. P. 3 advisory committee's note to 2021 amendment. Here, Mr. Jenkins preserved both the appointment of counsel and Rule 56(d) issues in his informal brief by listing and explaining them as "issues for review." ECF No. 9-1 at 2 (Issue 4); ECF No. 9-2 at 2 (Issue 5). Consistent with the spirit of Rule 3, Mr. Jenkins also identified the January 13, 2022, summary judgment order—the only final, appealable order he could have identified—as the order appealed from. ECF No. 9-1 at 1. But Mr. Jenkins also made crystal clear that he wanted this Court to "overturn *all orders* of

the District Court," ECF No. 9-1 at 3 (emphasis added), and elsewhere referenced the district court's "orders," ECF 9-2 at 1.

Mr. Jenkins's identification of the appointment of counsel and denial of discovery issues in his informal brief was more than sufficient to preserve them for review and put the opposing party on notice. *See Bogart*, 396 F.3d at 555 ("The appellant simply needs to address the merits of a particular issue in her opening brief in order to demonstrate that she had the intent to appeal that issue and the appellees were not prejudiced by her mistake, inasmuch as they had notice of the issue and the opportunity to fully brief it.").

## II.    The District Court Erred by Granting Summary Judgment Without Providing Mr. Jenkins Additional Time for Discovery.

In his response to Sheriff Woodard's motion for summary judgment, Mr. Jenkins requested "additional time . . . to discover other evidence to support his argument." JA67.  This request was unsurprising in light of Mr. Jenkins's complete lack of legal acumen, access to resources, and any realistic opportunity to pursue discovery up until that point.  In the same response, Mr. Jenkins—then a state inmate at Johnston Correctional Institution—explained that he had "no access to law materials," did not "have an education," had a "very low" I.Q. and a "history of mental illness," was not "in any shape to respond to the Defendant's motion without help," and did not "understand what he need[ed] to do."  JA65–67.  Nevertheless, the district court denied Mr. Jenkins additional discovery, after construing his

18

request as an affidavit under Federal Rule of Civil Procedure 56(d). JA69. That decision was error.

Rule 56(d) allows a party opposing summary judgment to request additional time for discovery when he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d); *see also Pledger*, 5 F.4th at 526. This relief follows from the general principle that "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods*, 302 F.3d at 244 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5 (1986)). Indeed, given the weighty consequences of summary judgment, this Court has repeatedly emphasized in recent years that "relief under Rule 56(d) is '*broadly favored* and should be *liberally granted* in order to protect nonmoving parties from premature summary judgment motions.'" *Pledger*, 5 F.4th at 526 (emphasis added) (quoting *McCray*, 741 F.3d at 484); *see also Shaw*, 59 F.4th at 128–29. This instruction applies with special force "in the context of pro se litigation." *Shaw*, 59 F.4th at 128–29 (citing *Pledger*, 5 F.4th at 526).

This Court has also found Rule 56(d) relief particularly appropriate when pro se claims "bear[] on the subjective knowledge of the . . . defendants." *Pledger*, 5 F.4th at 526. In *Pledger v. Lynch*, for example, the Court considered a pro se litigant's Eighth Amendment deliberate indifference claim. *Id.* at 524. Because the

19

factual showing required under the subjective prong of that claim weighed heavily in favor of granting additional time for discovery, the Court held that the district court erroneously granted summary judgment without providing Rule 56(d) relief. *Id.* at 526. Similarly, in *Shaw v. Foreman*, the Court held that the district court prematurely granted summary judgment on a pro se litigant's First Amendment retaliation claim against prison officials, observing that "[m]uch of the evidence that Shaw needs in this matter to combat a motion for summary judgment . . . bears on the Prison Officials' subjective knowledge." 59 F.4th at 129; *see also Harrods*, 302 F.3d at 246–47 (reversing summary judgment in a counseled case and observing that "summary judgment prior to discovery can be particularly inappropriate when a case involves complex factual questions about intent and motive").

Another circumstance weighing heavily in favor of liberally granting additional time for discovery is a pro se litigant's lack of access to evidence "exclusively in the control of the opposing party." *Pledger*, 5 F.4th at 526. In *Shaw*, for example, the Court explained that "premature summary judgment [was] particularly disfavored" when "[m]uch of the evidence" that the plaintiff needed to combat summary judgment was in the prison official defendants' "exclusive control." 59 F.4th at 128–29. There, the plaintiff never gained access to video evidence of the event forming the basis of his First Amendment retaliation claim before the district court granted summary judgment. *Id.* at 129–30. "On [that] basis

20

alone," the Court held, "the district court abused its discretion." *Id.* at 130; *see also Pledger*, 5 F.4th at 526 (finding "[s]ufficient time for discovery" "especially important" when the facts bearing on the plaintiff's deliberate indifference claim were exclusively in the opposing parties' control).

As in *Shaw*, *Pledger*, and *Harrods*, this Court should reverse the district court's improper grant of summary judgment without provision for additional time to conduct discovery.  Like the pro se litigants' claims in *Shaw* and *Pledger*, Mr. Jenkins's conditions-of-confinement and deliberate indifference claims require him to muster evidence of the defendant's subjective intent.  JA80–81, JA83, JA85 (discussing subjective aspects of Mr. Jenkins's claims).  Indeed, Mr. Jenkins's deliberate indifference claim implicates the *same analysis* that the Court found warranted 56(d) relief in *Pledger*.  Without additional time for discovery, Mr. Jenkins had no chance to uncover facts bearing on what Sheriff Woodard knew—and when he knew it—about Mr. Jenkins's serious medical needs and conditions of confinement.

Moreover, as in *Shaw* and *Pledger*, much, if not all, of the evidence that could support Mr. Jenkins's conditions-of-confinement and deliberate indifference claims lies within the exclusive control of Wilson County officials.  At the time Mr. Jenkins asked for additional time to discover these materials from Wilson County he was incarcerated and attempting to litigate his case without the assistance of an attorney

from a separate detention facility in a different part of the state. Just like the plaintiffs in *Shaw* and *Pledger*, without additional time, Mr. Jenkins had no chance of uncovering materials in the County's exclusive possession that would support his version of the events.

The district court's summary judgment order confirms that additional time for discovery would have made a difference for Mr. Jenkins's opposition. On page after page, the district court recites the evidence submitted in support of Sheriff Woodard's summary judgment motion, states that Mr. Jenkins does not contest the evidence, and concludes that summary judgment is appropriate. Indeed, *on six separate occasions*, the district court intones a version of the same refrain that "the Plaintiff does not contest these contrary averments." JA81–82, JA84, JA87–88. Had the district court granted Mr. Jenkins additional time to discover facts supporting his claims—including evidence of Sheriff Woodard's subjective knowledge and evidence in the exclusive control of Wilson County—Mr. Jenkins might have stood a chance. Without that relief, his claims were dead in the water.

Overlooking that Rule 56(d) relief is "broadly favored" and should be "liberally granted" in circumstances indistinguishable from those presented here, *Pledger*, 5 F.4th at 526, the district court dispatched Mr. Jenkins's request for additional time for discovery in a single sentence. JA69. The district court denied Mr. Jenkins's request because Mr. Jenkins had already had time to conduct discovery

and because Mr. Jenkins "fail[ed] to provide 'specified reasons' why" essential facts "[were] unavailable to him." JA69. As an initial matter, Mr. Jenkins *did* provide "specified reasons" why he lacked access to essential facts. He explained that he did not "understand what he need[ed] to do," that he "does not have an education," that he struggles with mental illness and has a low I.Q., and that he lacked "access to law materials." JA65–67. For these reasons, he repeatedly emphasized his need for "assistance" in discovering evidence and opposing Sheriff Woodard's motion. JA65–67; *cf. Pledger*, 5 F.4th at 526 (reversing denial of Rule 56(d) relief when the plaintiff "did, four times, seek appointment of counsel, based in part on the need for 'investigation'").

But even if Mr. Jenkins had not given specified reasons for requesting additional time, this Court has repeatedly excused technical noncompliance with the letter of the Rule 56(d). Indeed, in *Pledger*, the Court reversed summary judgment for failure to allow additional discovery *even though the plaintiff never requested Rule 56(d) relief. Id.* Because the plaintiff expressed a need for "investigation" in seeking appointment of counsel, and because of his pro se status, the Court concluded that he "put the district court on fair notice of a potential dispute as to the sufficiency of the summary judgment record." *Id.*; *see also Harrods*, 302 F.3d at 244 (collecting cases) (reversing summary judgment even though the plaintiff had not filed a Rule 56(d) affidavit and observing that "courts have not always insisted

23

on a [Rule 56(d)] affidavit if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary"). That same standard should apply here, where Mr. Jenkins actually made a request for additional time to conduct discovery, and put the district court on notice of the insufficiency of the summary judgment record.

At the end of the day, this Court has repeatedly instructed that Rule 56(d) relief is "broadly favored" and should be "liberally granted," especially in pro se cases where evidence of subjective intent lies in the exclusive control of the defendants. The district court did not heed that instruction and, just like the district courts in *Shaw*, *Pledger*, and *Harrods*, it abused its discretion by refusing Mr. Jenkins's request for additional time to conduct discovery.

## III. The Court Should Remand with Instructions to Appoint Trial Counsel to Assist Mr. Jenkins with Discovery and Further Litigation of His Civil Rights Claims.

"In the great run of *pro se* cases, the issues are faintly articulated and often only dimly perceived. There is, therefore, a greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). In light of Mr. Jenkins's history of mental illness, low I.Q., lack of formal

24

education, and demonstrated inability to effectively litigate his case, the district court fell short of discharging that important responsibility here.

### A. The District Court Erred by Granting Summary Judgment Without Assigning Trial Counsel to Mr. Jenkins.

"If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Gordon*, 574 F.2d at 1173. This Court has channeled that bedrock principle through the "exceptional circumstances" test. *Whisenant*, 739 F.2d at 163. Thus, although no "constitutional right to the appointment of counsel for civil litigation" exists, and the power to appoint "is a discretionary one," "it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." *Id.* The presence of exceptional circumstances turns on (1) "the type and complexity of the case" and (2) "the abilities of the individuals bringing it." *Id.* (quoting *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982)). Because exceptional circumstances are present here, the district court erred in denying Mr. Jenkins assistance.

Initially, despite Mr. Jenkins's repeated requests for counsel from the earliest days of his case, the district court never seriously engaged the exceptional circumstances analysis. That failure to meaningfully grapple with the proper analysis warrants reversal. *See Brock v. City of Richmond*, 983 F.2d 1055 (4th Cir. 1993) (unreported table decision) (reversing dismissal of pro se litigant's claims

25

when the magistrate considered "only the question of complexity," and "[t]here [was] no indication . . . that either the district judge or the magistrate judge ever considered Brock's level of education, background, knowledge of the law or ability to bring and prosecute his claim").

In Mr. Jenkins's original complaint, he painted a gruesome picture of his conditions of confinement. He alleged that the Rubber Room in the Wilson County jail was "infested with [feces]," that it "smell[ed] like waste and [feces]," and that "they fed me on the floor where [feces] was at and never let me wash my hands." JA11. As a result of these and other unsanitary conditions, he alleged that he started to "bleed [heavily]" and that "Wilson County never gave [him] medical attention" for several months. JA11. After he bled "for 5 months," medical personnel finally put him to sleep for a procedure that removed colon polyps. JA13. Mr. Jenkins also explained his fragile mental state, alleging that he takes "bipolar, [depression], [and] anxiety meds," and that he "attempt[ed] to kill [himself]" while in pretrial detention. JA11.

After filing his complaint, Mr. Jenkins inquired—on three separate occasions—about whether he had been assigned a lawyer. JA18–20. But despite these requests, and despite the concerning allegations in the original complaint, the district court summarily denied counsel, stating only that "[t]he facts of this case and plaintiff's abilities [did] not present the requisite exceptional circumstances." JA22.

26

After Mr. Jenkins amended his complaint, and Sheriff Woodard moved for summary judgment, Mr. Jenkins renewed his request for assistance of counsel, elaborating that he had "no access to law materials," did not "have an education," had a "very low" I.Q. and a "history of mental illness," was not "in any shape to respond to the Defendant's motion without help," and did not "understand what he need[ed] to do." JA65–67. But again the district court summarily concluded— without any explanation or legal analysis—that "the facts of this case and plaintiff's abilities [did] not present the requisite exceptional circumstances" meriting assistance of counsel. JA69. Two weeks later Mr. Jenkins asked the district court to reconsider its denial, adding that his "I.Q. is 84 or [lower]." JA71. Unmoved, the district court repeated its prior conclusion that "the facts of this case and plaintiff's abilities [did] not present the requisite exceptional circumstances necessitating appointment of counsel." JA74.

While the district court cited the correct standard each time it denied Mr. Jenkins counsel, the district court never explained why Mr. Jenkins did not meet the standard beyond repeating the same bare conclusion. JA22, JA69, JA74. The district court's complete failure to perform any legal analysis or explain why the extreme limitations on Mr. Jenkins's abilities and the complexities of his case did not merit appointment of counsel alone was reversible error. *See Brock*, 983 F.2d at 1055 (unreported table decision).

But even if the district court's rote statement of the standard followed by an unadorned, one-sentence conclusion passes muster, the district court erred in applying the test. Exceptional circumstances are present where a pro se litigant "is ill-equipped to represent himself or to litigate a claim [of a certain type]." *Whisenant*, 739 F.2d at 163. The plaintiff in *Whisenant* satisfied that factor because "he [was] relatively uneducated generally and totally uneducated in legal matters," could not "leave prison to interview witnesses," and had "no training in cross-examination." *Id.* The Court has also found this factor satisfied when the plaintiff suffers from "severe mental illness." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017).

As for the "colorable claim" prong, this factor weighed in favor of appointing counsel to assist with the plaintiff's deliberate indifference claim in *Whisenant* because "there was evidence that Whisenant was bleeding orally and rectally," but "but did not receive adequate medical treatment" until several hours later when "life-sustaining measures were required." 739 F.2d at 162–63. In light of these facts, "the claim of deliberate indifference [was] not frivolous." *Id.* In *Evans*, the Court found that this factor weighed in favor of appointment because the plaintiff's claims "implicate[d] a complex but colorable tolling issue." 713 F. App'x 167 at 170.

Exceptional circumstances like these are present here. Like the plaintiff in *Whisenant*, Mr. Jenkins explained that he "does not have an education," much less a

28

legal education, and that he has a "very low" I.Q.  JA65, JA67.  Mr. Jenkins was also incarcerated in a correctional facility almost an hour away from the Wilson County jail at the time of his requests and, like the plaintiff in *Whisenant*, could not leave to interview witnesses or conduct discovery.  Moreover, like the plaintiff in *Evans*, Mr. Jenkins has detailed, on multiple occasions, his "history of mental illness," and described a prior suicide attempt in his very first filing in the district court.  JA11, JA65, JA71.  Thus, as in *Whisenant* and *Evans*, the "abilities of the plaintiff" prong weighs strongly in favor of appointing Mr. Jenkins counsel.

So too does the "colorable claims" prong.  Like the plaintiff in *Whisenant*, Mr. Jenkins has alleged that his stint at the Wilson County jail led to severe bleeding that the detention center staff did not take seriously.  And it is undisputed that Mr. Jenkins's health issues ultimately led to a medical intervention in the spring of 2019. Moreover, while the conditions-of-confinement and deliberate indifference claims that Mr. Jenkins raises may seem straightforward to an experienced legal practitioner, they are sufficiently complex to stymie the efforts of an uneducated pro se plaintiff like Mr. Jenkins who lacks "access to law materials."  JA65–66; *see also* JA37 (acknowledging that "plaintiff's Fourteenth Amendment claim as to Sheriff Woodard [was] not clearly frivolous").

The exceptional circumstances presented by this case are not just speculative. Without assistance of counsel, Mr. Jenkins has been completely unable to conduct

discovery, "does not understand what he needs to do," and has been forced to rely on "what other inmates suggest he write." JA65, JA67. This is not a case where a pro se litigant touts incompetence but is nevertheless able to litigate effectively. *Cf. Spann v. Perry*, No. 21-6740, 2022 WL 4364020, at *1 (4th Cir. Sept. 21, 2022) ("[A]lthough Spann alleged that he was mentally incompetent, he demonstrated the ability to present his claims to the court through his previous filings."). Rather, the district court record is replete with signs that Mr. Jenkins could not prosecute his case alone and that the serious constitutional violations he alleged would not be fairly aired without assistance of counsel. Given several opportunities, the district court repeatedly ignored those signs, and therefore abused its discretion.

**B.    Even if the District Court Did Not Abuse its Discretion by Failing to Appoint Mr. Jenkins Trial Counsel, the Court Should Remand with Instructions to Appoint Counsel.**

In all events, the Court should instruct the district court to appoint counsel on remand to assist Mr. Jenkins with the additional discovery he was erroneously denied. *See supra* § II. In cases that "require further factual development on remand," this Court regularly recommends the appointment of counsel. *Shaw*, 59 F.4th at 132. That includes in cases—like this one—where the district court abused its discretion by denying Rule 56(d) relief, *Shaw*, 59 F.4th at 132; *Pledger*, 5 F.4th at 527 n.6, as well as cases where the appellant argued that the district court committed reversible error by denying assistance of counsel, *Brooks v. Johnson*, 924

30

F.3d 104, 122 n.9 (4th Cir. 2019) (citing *Williams v. Collier*, 357 F. App'x 532, 536 (4th Cir. 2009)).  When the litigant's obligations on remand will "likely involve complex issues, including discovery and review of medical records, securing expert testimony, and the nuances of Eighth Amendment jurisprudence," such an instruction is warranted.  *Williams*, 357 F. App'x at 536.

Those obligations are present here.  As discussed above, Mr. Jenkins faces the difficult task of seeking and uncovering evidence within the exclusive control of Wilson County officials that could support his theory that jail personnel knew about, but ignored, his serious medical needs and the prison conditions that caused them. He will also need to parse medical records and his patient history to demonstrate that his medical needs were objectively severe and caused by his time in detention. Especially in light of Mr. Jenkins's lack of formal academic and legal training, his low I.Q., and his history of severe mental illness, an instruction to appoint counsel will help ensure that "constitutional deprivations are redressed and that justice is done" in this case.  *Gordon*, 574 F.2d at 1151.

## CONCLUSION

This Court should reverse the district court's orders and remand the case to the district court with instructions to appoint trial counsel to Mr. Jenkins to assist with discovery and further litigation of his civil rights claims.

31

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant requests oral argument.  This appeal presents an issue of first impression in this Circuit regarding jurisdiction to review non-final interlocutory orders under the 2021 amendment to Federal Rule of Appellate Procedure 3, as well as important matters of trial procedure in pro se civil rights cases.  Oral argument would aid the decisional process.

Dated:  November 7, 2023                    Respectfully submitted,

                                    */s/  J. Pierce Lamberson*

                                    J. Pierce Lamberson
                                    HUNTON ANDREWS KURTH LLP
                                    Riverfront Plaza, East Tower
                                    951 East Byrd Street
                                    Richmond, VA 23219-4074
                                    804-787-8039
                                    *plamberson@hunton.com*

                                    *Attorney for Plaintiff-Appellant Kenneth Ray Jenkins*

## **CERTIFICATE OF COMPLIANCE**

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 7,356 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  November 7, 2023                    */s/  J. Pierce Lamberson*

                                                                *Attorney for Plaintiff-Appellant Kenneth Ray Jenkins*

## **CERTIFICATE OF SERVICE**

I certify that on November 7, 2023, I electronically filed the foregoing with the Clerk of Court through the Court's CM/ECF system. The participants in the case are registered CM/ECF users, and service will be accomplished through the CM/ECF system.

*/s/  J. Pierce Lamberson*

*Attorney for Plaintiff-Appellant Kenneth Ray Jenkins*

34