**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-6197

KENNETH RAY JENKINS,

        Plaintiff – Appellant,

  v.

SHERIFF CALVIN WOODARD,

        Defendants – Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:19-ct-03190-BO)

Argued: March 22, 2024                                   Decided: July 22, 2024

Before GREGORY, WYNN, and HARRIS, Circuit Judges.

Reversed, vacated, and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** Jeffrey Pierce Lamberson, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellant. Emmett James Whelan, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** James R. Morgan, Jr., WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellee.

GREGORY, Circuit Judge:

Appellant Kenneth Ray Jenkins was detained at Wilson County Detention Center while awaiting trial in 2018. According to Jenkins, while there, he faced unsanitary living conditions – including confinement in cells infested with feces – that caused him to contract a bacterial illness. He initiated the underlying action under 42 U.S.C. § 1983, asserting conditions of confinement and deliberate indifference claims for violations of his rights guaranteed by the Fourteenth Amendment to the United States Constitution. Jenkins now appeals the district court's denial of his request for additional time to conduct discovery, denials of his requests for counsel, and grant of Sheriff Woodard's motion for summary judgment. For the reasons that follow, we reverse the district court's denials of Jenkins's requests for discovery and counsel, vacate its summary judgment decision, and remand for discovery and further proceedings consistent with this opinion.

I.

The following allegations are drawn from Jenkins's complaint. Jenkins suffers from depression, bipolar disorder, and anxiety disorder and takes daily medication to treat those conditions. Jenkins first entered Wilson County Detention Center ("WCDC") on August 28, 2018. The next day, Jenkins requested his medication. Officers refused to allow Jenkins to obtain his medication, and an altercation ensued. Officers placed Jenkins in solitary confinement following the altercation. At some point while he was in solitary confinement, Jenkins attempted suicide. Officers then moved Jenkins to "A-300"

2

(presumably a padded room to prevent another suicide attempt), which Jenkins refers to as the "Rubber Room." J.A. 11.

The Rubber Room was unsanitary and had a persistent odor of waste and feces. It was also "infested with feces all over the room," including on the floor and ceiling. *Id*. While Jenkins was in the Rubber Room, officers fed him his food on the floor near feces, prohibited him from washing his hands, and told him to "eat with his hands" the "best way" he could. *Id*. On at least one occasion, Jenkins's food tray had roaches on it when officers gave it to him. On another, Jenkins alleges his tray was soiled by a green mold-like substance.

At some point, Jenkins was transferred from WCDC to Hanover Prison for a mental health evaluation. He returned to WCDC on September 28, 2018, but was not placed back in the Rubber Room. He alleges that he did not file any grievances about the Rubber Room's conditions or his experiences in the Rubber Room because "they wouldn't give [him] any[,]" indicating that WCDC officials would not provide him with the forms needed to file a complaint. J.A. 12.

Sometime in October or November 2018, Jenkins began to bleed from his rectum. He informed WCDC officials, including Appellee Sheriff Calvin Woodard, that he was in severe pain and bleeding, and he asked to see a medical provider. Jenkins filed "a multitude of complaints" regarding his medical issues but Sheriff Woodard only responded to one. J.A. 11. WCDC refused him medical attention for months, despite his heavy bleeding.

WCDC eventually permitted Jenkins to see a medical provider in February 2019. Sometime that month, medical providers conducted an MRI, a colonoscopy, and another

3

procedure for which Jenkins had to be placed under general anesthesia. Through these diagnostic procedures, the providers discovered three colon polyps, one of which they described as "the worst they [had] seen." *Id*. The providers diagnosed Jenkins with a helicobacter pylori infection (a bacterial infection in the stomach), diverticulitis (inflammation in the wall of the large intestine), and hemorrhoids.

At some point after the evaluation, a medical provider lanced and lasered Jenkins's colon polyps and prescribed Jenkins antibiotics to treat his infections. In total, Jenkins suffered from heavy bleeding for eight months, and was denied medical attention for at least three of those months. Jenkins alleges that he did not specify the dates of his medical treatment in his filings because he did not want to include incorrect dates but notes that "the nurse [has] all [his] medical records." J.A. 12. Jenkins was eventually transferred to another facility and is currently incarcerated.

## II.

The procedural history in this case is extensive. We therefore recite only those portions of the procedural history relevant to the instant appeal. In June 2019, Jenkins, then a state pretrial detainee, filed his first pro se complaint asserting claims under 42 U.S.C. § 1983 against WCDC. In his initial complaint, Jenkins alleged that the unsanitary conditions of his pretrial confinement caused his medical ailments and that WCDC failed to give him timely, necessary medical attention.

Sometime after filing his complaint, Jenkins sent a letter to the district court seeking to amend his complaint and appointment of counsel. By order dated January 22, 2020, the

4

district court granted Jenkins's motion to file an amended complaint and denied his request for appointment of counsel. Regarding the latter request, the court indicated that Jenkins' abilities and the facts of the case did not rise to the level of exceptional circumstances necessary to appoint counsel.

Jenkins filed an amended complaint on January 31, 2020. The amended complaint referred to the same set of events covered by the initial complaint but attributed the challenged conduct to specific WCDC officials, including Sheriff Calvin Woodard, and named those officials as defendants. On October 7, 2020, the court conducted an initial review of the amended complaint and dismissed all claims except Jenkins's Fourteenth Amendment conditions-of-confinement and deliberate-indifference claims asserted against Sheriff Woodard. Sheriff Woodard answered the complaint, and the court entered a scheduling order setting deadlines for discovery and other pre-trial affairs.

Sheriff Woodard moved for summary judgment on April 5, 2021. He attached affidavits of two WCDC officials to his motion, among other exhibits. On April 6, 2021, the court mailed Jenkins a letter informing him about the motion for summary judgment, the consequences of failing to respond, and the response deadline in accordance with our decision in *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), in which we held that district court's must provide pro se plaintiffs with notice of all summary judgment requirements before entering judgment against them. The *Roseboro* letter was returned to the court as undeliverable about two weeks later. The court mailed another *Roseboro* notice to Jenkins two days after it received the returned letter.

5

Jenkins filed an opposition to Sheriff Woodard's motion for summary judgment on May 18, 2021. In it, Jenkins expressed his disagreement with Sheriff Woodard's statements of fact, asked the court to adopt the facts as alleged in his complaint, and asserted that disputes of fact precluded summary judgment. He also renewed his request for appointment of counsel and requested additional time to collect evidence and oppose the motion.

On November 17, 2021, the court issued an order construing that filing as a request for counsel, a Rule 56(d) motion for additional time for discovery, and a request for an extension of time to further oppose Sheriff Woodard's motion. The court denied Jenkins's renewed request for counsel and denied his Rule 56(d) motion, finding that he failed "to provide 'specified reasons' why facts essential to justifying opposition . . . were unavailable to him." J.A. 69. It granted Jenkins's request for an extension of time and allowed him until December 17, 2021, to oppose the motion.

On December 2, 2021, Jenkins moved for reconsideration of the portion of the court's November 17 order denying his request for counsel. Sheriff Woodard opposed the motion, and the court denied the motion days later. Jenkins did not file any additional responses or otherwise oppose Sheriff Woodard's motion for summary judgment before the court's deadline. On January 13, 2022, the district court granted Sheriff Woodard's motion for summary judgment, finding that Jenkins failed to demonstrate a material factual dispute and that the allegations in Jenkins's complaint were insufficient to create a triable issue. Jenkins timely appealed.

III.

In his informal brief, Jenkins purports to challenge the district court's denials of his requests for counsel and for additional time for discovery. However, he did not list any of those decisions in his notice of appeal, which explicitly challenged only the court's summary judgment decision. Both parties maintain that this Court nonetheless has jurisdiction to review all orders challenged on appeal because Jenkins appealed the court's final order. Because we have an independent obligation to assure ourselves of jurisdiction over an appeal irrespective of the parties' beliefs, we begin our analysis with the jurisdictional question. *See Martinez v. Garland*, 86 F.4th 561, 566 (4th Cir. 2023); *Sprint Nextel Corp. v. Wireless Buybacks Holdings, LLC*, 938 F.3d 113, 122 (4th Cir. 2019).

The notice of appeal is meant to be a simple document that provides notice that a party is appealing and invokes federal appellate court jurisdiction. *See* Fed. R. App. P. 3 Advisory Committee's Note to 2021 Amendment. At minimum, the notice of appeal must state who is appealing, the order or judgment being appealed, and to what court the appeal is being taken. *Id*.

In 2021, the Advisory Committee on the Federal Rules of Appellate Procedure amended the rules to incorporate the merger principle, under which a party's identification of the final judgment in its notice of appeal confers appellate jurisdiction over prior interlocutory orders that merge into the final judgment. According to the Committee, "[t]he general merger rule can be stated simply: an appeal from a final judgment permits review

7

of all rulings that led up to the judgment."[1] *Id*. Thus, under the current version of the rule, a party need not designate all orders he seeks to appeal in his notice of appeal. Fed. R. App. P. 3(c)(4). Rather, a party's notice of appeal of a final order encompasses all orders that merge into that order. *Id*.

In his notice of appeal, Jenkins explicitly challenged the district court's order granting Sheriff Woodard's summary judgment motion and dismissing his case. That order encompassed all prior district court orders, including those denying Jenkins's requests for appointment of counsel and additional time for discovery. Accordingly, we have jurisdiction to review those decisions on appeal. We now turn to Jenkins's challenges.

IV.

Jenkins challenges the district court's denials of his requests for counsel. Throughout the litigation below, Jenkins referred to court-appointed counsel on several occasions, and expressly requested counsel at least twice. *See* J.A. 18–20, 65–66, 71–72. The district court denied each request but did not explain the rationale for any of its decisions. Rather, the court's orders denying the requests include only conclusory

---

[1] The Committee advised that details regarding the principle's applicability should be resolved in case law because the rule is "subject to some exceptions and complications." Fed. R. App. P. 3 Advisory Committee's Note to 2021 Amendment. We have recognized that case law on this issue is limited. *See Wall Guy, Inc. v. Fed. Deposit Ins. Corp.*, 95 F.4th 862, 877 fn. 9 (4th Cir. 2024) (stating that "there has been little case law interpreting which orders 'merge into' a later order" since the amendments to Rule 3 were implemented). However, because interlocutory orders are not otherwise appealable in most cases, we have assumed that the merger principle applies to them in the absence of case law to the contrary. *See Tyson v. Gay*, No. 22-6760, 2024 WL 1636462, at *1 fn. 1 (4th Cir. Apr. 16, 2024) (assuming without deciding that the plaintiff's requests for attorney's fees and discovery sanctions merged into the final judgment being appealed.).

8

statements, such as "the facts of this case and plaintiff's abilities do not present the requisite exceptional circumstances necessitating appointment of counsel." J.A. 22, 65. Jenkins contends that the court's failure to provide an explanation for its conclusions evinces a failure to conduct the appropriate analysis. On that basis, Jenkins urges this Court to reverse the district court's decisions.

We set out the standard for appointment of counsel in civil cases in our decisions in *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296 (1989), and *Brock v. City of Richmond*, 963 F.2d 1055 (4th Cir. 1993) (per curiam). In *Whisenant*, the district court denied the plaintiff's request for counsel based on the court's mistaken belief that it could not appoint counsel in certain cases. 739 F.2d at 162. On appeal, we noted that district courts have discretion to appoint counsel in civil cases and abuse that discretion by declining to do so "where the case of an indigent person presents exceptional circumstances." *Id*. We advised that a district court must conduct a fact specific, two-part inquiry to assess whether a case presents exceptional circumstances before it decides whether to appoint counsel. *Id*. That inquiry requires the court to determine (1) whether the plaintiff "has a colorable claim" and (2) considering the claim's objective complexity and the plaintiff's subjective abilities, whether the plaintiff "lacks the capacity to present it." *Id*. If both questions are answered affirmatively, the case presents exceptional circumstances. *Id*.

We concluded that the *Whisenant* plaintiff had a colorable claim because the claim was not frivolous and that he lacked the capacity to present it because he was "ill-equipped" to represent himself. *Id.* In making the latter determination, we emphasized that the

9

plaintiff was relatively uneducated, lacked any legal knowledge, and could not leave the prison to interview witnesses. *Id*. We also noted that the assistance of a lawyer with training in cross-examination would be crucial because the case depended on witness credibility. *Id*. We held that the case presented exceptional circumstances and that the district court was required to appoint counsel.[2]

As the Fifth Circuit has recognized, "No comprehensive definition of exceptional circumstances is practical." *Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Rather, the existence of exceptional circumstances in each case "hinges on characteristics of the claim and the litigant." *Whisenant*, 739 F.2d at 163. The district court must therefore assess (1) whether the plaintiff asserts a claim that is not frivolous, (2) the difficulty of the claim, and (3) whether the plaintiff can present the claim considering the skill required to do so and the plaintiff's individual abilities. The district court's failure to make these assessments is legal error. *Brock*, 983 F.2d at 1055.

In *Brock*, the district court erroneously denied the plaintiff's request for counsel based on its finding that the case was not sufficiently complex. *Id*. We held that the court abused its discretion because it did not evaluate all the factors that must be considered under the *Whisenant* test. *Id*. While the court addressed the complexity of the case, we

---

[2] In directing the district court to appoint counsel, we stated that "there is a duty on the part of the bar to accept court-appointments to represent indigent plaintiffs with colorable claims." *Id*. at 164. The Supreme Court later abrogated that part of our holding in *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, where it held that 28 U.S.C. § 1915(d) "does not authorize the federal courts to make coercive appointments of counsel." 490 U.S. 296, 310 (1989). The Court's *Mallard* decision did not affect any other holding in *Whisenant*. Thus, district courts in this Circuit must still apply the *Whisenant* test when assessing requests for appointment of counsel. *See Brock*, 983 F.2d 1055.

said, it failed to consider "the equally important question" of the plaintiff's abilities. *Id*. We noted that, under *Whisenant*, a plaintiff's lack of general education and legal knowledge could warrant appointment of counsel. *Id*. On that basis, we concluded that the court erred in failing to evaluate whether and how the plaintiff's education, background, knowledge of the law, and ability to litigate while incarcerated affected his capacity to present his claim. *Id*. We reversed the court's decision and remanded the case with instructions for the court to properly apply the *Whisenant* test. *Id*.

Jenkins contends that remand is warranted because the district court "never seriously engaged with the exceptional circumstances analysis" and therefore failed "to meaningfully grapple with the proper analysis" regarding his repeated requests for counsel. Opening Br. 25. His contention is premised on the assumption that the district court's failure to explain its application of the *Whisenant* test necessarily means that the court did not apply the test at all. *See* J.A. 22 (district court stating only that "the facts of this case and plaintiff's abilities do not present the requisite exceptional circumstances necessitating appointment of counsel"). We need not make that assumption, nor must we determine today whether a district court must always document its *Whisenant* analysis because it is obvious from the record before us that Jenkins lacks the ability to present his claims given his physical, mental, and intellectual limitations. Thus, even assuming the district court considered all the necessary factors, albeit without documenting its analysis, the court's determination that this case does not present exceptional circumstances demonstrates a clear error of judgment under our prior decisions.

11

This Court is obliged to reverse a district court's decision if it has a "definite and firm conviction" that the court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). Like the plaintiffs in *Whisenant* and *Brock*, Jenkins is incarcerated and informed the district court that he lacks general education and legal knowledge. This Court has already determined that those factors can limit one's ability to present his claims. *See Whisenant*, 739 F.2d at 163. So, too, does Jenkins's inability to access legal materials and evidence because even the most skilled attorney would struggle representing a client under those circumstances. *See Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017). As in *Whisenant*, 739 F.2d at 163, the absence of a lawyer with the ability to cross-examine is especially problematic because Jenkins's case, too, turns on witness credibility, given the stark contrast between his account of the relevant events and Sheriff Woodard's. And importantly, Jenkins's severe mental illness further diminishes his ability to represent himself, especially considering his other limitations. *See Evans*, 713 F. App'x at 170 (exceptional circumstances presented where the claim was complex, and the plaintiff suffered from severe mental illness and was committed to a psychiatric facility without access to legal materials). Collectively, these facts demonstrate that this case presents the requisite exceptional circumstances necessitating appointment of counsel.

Sheriff Woodard nonetheless urges this Court to affirm the court's denials of Jenkins's requests. He offers three arguments in support of his position, all of which are unavailing. *First*, Sheriff Woodard argues that the court appropriately denied Jenkins's

12

requests because Jenkins's legal inexperience and prisoner status do not constitute exceptional circumstances. Sheriff Woodard is correct that inexperience and incarceration alone do not warrant appointment of counsel. But that does not account for the effect of Jenkins's severe mental illness on his ability to present his claim.

*Second*, Sheriff Woodard maintains that the court properly denied Jenkins's requests because this case is simple and "manageable for someone without legal training." *Id*. According to Woodard, Jenkins can represent himself because the relevant events occurred over an eight-month span, the facts and potential witnesses are limited in scope and number, and the claims presented are "narrow" and "conventional." *Id*. In making this argument, Sheriff Woodard seems to misunderstand the standard. We pause to note that eight months is not necessarily a short time frame, particularly where the alleged constitutional violations were continuous. There is also no basis for us to conclude that this case which will require collection of evidence from the facility accused of such egregious constitutional violations, cross-examination of witnesses, and assessment of important constitutional issues under a new standard (which the parties failed to mention on appeal, *see infra* fn. 3) is "manageable for someone without legal training" as Sheriff Woodard contends. Furthermore, the *Whisenant* test requires the district court to assess the claim's complexity in connection with the plaintiff's subjective ability. *See Brock*, 983 F.2d at 1055. Consequently, even if the average layman could present these claims pro se given the time frame and narrow scope at issue, that fact says nothing about Jenkins's capacity to present the claims.

13

*Third*, Sheriff Woodard contends that Jenkins demonstrated his ability to litigate this case by "competently present[ing] and coherently explain[ing]" his claims, flagging the relevant issues to the district court, and remaining "highly engaged" in the matter. Resp. Br. 14. That characterization overstates Jenkins's participation in the litigation below. Indeed, nothing in the record demonstrates that Jenkins competently or coherently presented his claims, or that he can litigate this case. At best, Jenkins demonstrated his ability to tell portions of his story, explicitly disagree with Sheriff Woodard's version of the facts and inform the district court of his personal limitations. Moreover, even if Jenkins was "highly engaged" in responding to the letters he received, his inability to conduct discovery, file motions, or otherwise litigate his case while incarcerated demonstrates that he was not "highly engaged" in the matter as Sheriff Woodard suggests.

As discussed above, Jenkins's unique limitations evince that his lack of capacity to present his claims. The district court therefore abused its discretion by concluding otherwise. Accordingly, we reverse the district court's denials of Jenkins's requests for counsel and direct the district court to appoint counsel on remand.

V.

Jenkins also challenges the district court's denial of his request for additional time to "discover other evidence to support his argument," J.A. 65, which the district court construed as a motion for additional time under Rule 56(d) of the Federal Rules of Civil Procedure. J.A. 69. The district court denied Jenkins's motion because, according to the court, Jenkins failed to "specif[y] reasons" why he could not obtain facts essential to

14

oppose Sheriff Woodard's motion during the period set in the court's scheduling order. *Id*. Because the district court erred by refusing to appoint Jenkins counsel, we conclude it also erred by refusing to grant his request to extend discovery.

This Court reviews a district court's denial of a request for additional time for discovery for abuse of discretion. *Pledger v. Lynch*, 5 F.4th 511, 524 (4th Cir. 2021). Under that standard, we review the court's legal conclusions de novo, and its factual findings for clear error. *Moses Enterprises, LLC v. Lexington Ins. Co.*, 66 F.4th 523, 526 (4th Cir. 2023).

Under Rule 56(d), where a nonmovant shows by affidavit or declaration that "for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, a district court may deny or defer consideration of the motion, allow time for the nonmovant to take discovery before assessing the motion, or issue any other order it deems appropriate. Fed. R. Civ. P. 56(d). Rule 56(d) therefore permits a district court to extend the discovery period after a party moves for summary judgment where the court is aware that additional discovery is necessary. *Id*.

Although the language used in Rule 56(d) is discretionary, the Supreme Court has instructed that summary judgment motions should only be granted "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Consistent with that instruction, this Court has cautioned that district courts should not consider summary judgment motions where the nonmoving party has not had an opportunity to discover information essential to its opposition. *Shaw v. Foreman*, 59 F.4th 121, 128–29 (4th Cir. 2023). Relief under Rule 56(d) is therefore "broadly favored" in this Circuit and should be "liberally granted." *Pledger*, 5 F.4th at 526 (internal quotation marks omitted). This is

15

especially true in the context of pro se litigation and when the movant exclusively controls evidence relevant to the nonmovant's opposition. *Id*.

Jenkins concedes that he did not submit an affidavit or declaration to the district court when he requested additional time for discovery. But contrary to the district court's conclusion (that Jenkins failed to "specif[y] reasons" for needing additional time for discovery), Jenkins nonetheless explained in his filings why he was unable to obtain evidence during the scheduled discovery period. Specifically, Jenkins noted that he could not access legal materials and evidence, has a low IQ, lacks general education and legal knowledge, has a history of severe mental health issues, and suffered from complications related to the COVID-19 pandemic at various points during the litigation. *See* J.A. 65–67, 71. And, immediately after discussing why he needed additional time in which to conduct discovery, he again requested that the court appoint him counsel. *See* J.A. 67.

Jenkins's justifications readily explain his failure to conduct discovery. And each of those barriers would have been remedied had the district court appointed counsel. Therefore, because the district court's failure to appoint Jenkins counsel was an abuse of discretion and Jenkins's lack of counsel denied him a meaningful opportunity to conduct discovery, the district court's refusal to grant an extension of discovery was also an abuse of discretion. Having so determined, we need not review the district court's summary judgment decision on the merits. *See Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 120 (4th Cir. 2015) (stating that we will review the district court's summary judgment decision on the merits de novo only if we determine that the district court did not abuse its discretion in assessing the motion before discovery).

16

VI.

The district court abused its discretion in denying Jenkins's requests for appointment of counsel and additional time for discovery. Additionally, because the district court erred in denying Jenkins's request for additional time for discovery, its pre-discovery summary judgment decision was premature. We therefore reverse the court's denials of Jenkins's requests for appointment of counsel and additional time for discovery, vacate the court's summary judgment decision on the merits, and remand this case for additional proceedings consistent with this opinion. We direct the district court to appoint counsel on remand to assist Jenkins with presenting his claims.

*REVERSED, VACATED, AND REMANDED*